**FLAKE & FLAKE – ATTORNEYS AT LAW**
JORDAN M. FLAKE, ESQ.
Nevada Bar No. 10583
TROY K. FLAKE, ESQ.
Nevada Bar No. 16859
8905 S. Pecos Rd., Ste. 23B
Henderson, NV  89074
Telephone (702) 818-1800
Attorneys for Plaintiff
jordan@flakeandflake.com
troy@flakeandflake.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| WHITNEY HARRISON, an individual; | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## I.  INTRODUCTION

1. Plaintiff Whitney Harrison ("Plaintiff"), by and through her attorneys of record, brings this action against the United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671–2680, for injuries she suffered while a patient at the VA Southern Nevada Healthcare System (the "Facility") in North Las Vegas, Nevada, during the period of June 24 through June 26, 2023.

2. Plaintiff is a 100% service-connected disabled veteran with a documented history of military sexual trauma, post-traumatic stress disorder, and other serious psychiatric conditions. She voluntarily presented to the Facility's Emergency Department seeking treatment for alcohol withdrawal. Rather than providing her the safe and therapeutic care she was promised, the Facility confined Plaintiff to a locked psychiatric ward without informed consent, housed her alongside male psychiatric patients, including at least one registered sex offender who threatened to rape

female patients, and refused to release her upon her repeated requests in violation of Nevada law. Plaintiff was held against her will for more than 50 hours, suffering severe emotional distress that has had lasting consequences for her mental and physical health.

3. The VA's failures in this case were not isolated. The VA Office of Inspector General substantiated that the Facility systematically failed to obtain informed consent before admitting patients to its locked psychiatric unit and maintained a discharge policy that violated Nevada state law. Additionally, Elita C. Pallasigui, APRN, the nurse practitioner directly involved in Plaintiff's care who denied Plaintiff's request for discharge, was formally disciplined by the Nevada State Board of Nursing, which found that she "denied a voluntarily admitted patient's request to leave the hospital against medical advice (AMA) without valid medical or psychological reasons to do so, and without following procedures for an involuntary hold."

## II. PARTIES

4. Plaintiff Whitney Harrison is a natural person and a resident of Las Vegas, Clark County, Nevada. At all times relevant to this Complaint, Plaintiff was a veteran of the United States Navy, having served from approximately 2011 to 2016 as a Hospital Corpsman. She is rated at 100% service-connected disability by the Department of Veterans Affairs, with her primary service-connected disability being post-traumatic stress disorder resulting from military sexual trauma.

5. Defendant is the United States of America. At all times relevant to this Complaint, the VA Southern Nevada Healthcare System, located at 6900 North Pecos Road, North Las Vegas, Nevada 89086, was a medical facility operated by the Department of Veterans Affairs, an agency of the United States. All individual healthcare providers and staff whose acts and omissions are described herein were employees of the United States acting within the scope of their employment at the time of the events alleged.

## III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1), which grants federal district courts exclusive jurisdiction over civil actions on claims against the United States for money damages for injury caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his or her office or

employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

7. The acts and omissions giving rise to this action occurred in Clark County, Nevada. Accordingly, the substantive law of the State of Nevada governs the claims asserted herein, except to the extent that it conflicts with federal law. *See, e.g., Berk v. Choy*, 607 U.S. ___ (2026) (state law medical malpractice affidavit requirement does not apply in federal court).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1402(b) because the acts and omissions complained of occurred within the District of Nevada.

9. As a condition precedent to filing this action, Plaintiff timely presented an administrative tort claim (Standard Form 95) to the Department of Veterans Affairs on February 14, 2025. More than six months have elapsed since the filing of the administrative claim without the agency having made a final disposition thereof. Accordingly, Plaintiff is entitled to file suit pursuant to 28 U.S.C. § 2675(a), which deems the claim to have been finally denied.

## IV.    FACTUAL ALLEGATIONS

*A. Plaintiff's Background and Vulnerabilities*

10. Plaintiff served in the United States Navy from 2011 to 2016 as a Hospital Corpsman. During her military service, Plaintiff was a victim of military sexual trauma. As a result, she carries a 100% service-connected disability rating for PTSD. She also has been diagnosed with major depressive disorder, anxiety, alcohol use disorder, and numerous other service-connected conditions. At the time of the events alleged herein, the VA was aware of Plaintiff's extensive trauma history and her particular vulnerability to confinement with male patients.

*B. Admission to the Locked Psychiatric Unit Without Informed Consent*

11. In June 2023, Plaintiff was a resident of Las Vegas, Nevada. She had a history of alcohol use disorder. On or about June 22, 2023, Plaintiff stopped drinking alcohol and began experiencing withdrawal symptoms including nausea, shaking, and anxiety.

12. In the early morning hours of June 24, 2023, Plaintiff called the VA Health Connect Clinical Triage line and spoke with a registered nurse about her withdrawal symptoms. The nurse encouraged Plaintiff to present to the VA for treatment. Plaintiff arrived at the Emergency

Department of the VA Southern Nevada Healthcare System at 6900 North Pecos Road, North Las Vegas, Nevada ("the Facility") at approximately 6:01 a.m. seeking voluntary treatment for alcohol detoxification.

13. Plaintiff was seen in the Emergency Department by Dr. Russell P. Clark, who provided treatment for alcohol detoxification monitoring. Plaintiff agreed to be admitted for detoxification. Plaintiff was admitted to the hospital. She was then escorted by VA Police to the Facility's locked inpatient mental health unit, known as "2 East" or "2E." The 2 East unit is a locked psychiatric ward that provides services to patients with serious mental health disorders who may be experiencing acute and severe emotional or behavioral symptoms.

14. Prior to Plaintiff's admission to the locked unit, the VA failed to conduct an informed consent discussion with her regarding the nature of the locked psychiatric unit, including the fact that it was locked and housed patients with severe mental health conditions, including involuntarily committed psychiatric patients. Plaintiff would not have consented to admission to the unit had she known that it was locked and that it housed male psychiatric patients. A physician later documented that the patient "probably would not" have agreed to admission had she known "this is how it is in here." The VA Office of Inspector General subsequently substantiated that the Facility failed to have an informed consent discussion with the patient as required, prior to admission to the locked inpatient mental health unit.

15. Further, the OIG found that the Facility lacked a standardized informed consent discussion process to inform patients of the restrictions and potentially severe mental health conditions that are treated in the locked inpatient mental health unit.

16. Upon arriving on the 2 East unit, staff took Plaintiff's possessions including her phone. Plaintiff immediately became distressed upon realizing that she had been placed on a locked psychiatric ward rather than a medical detoxification unit. A nurse documented that Plaintiff stated staff "lied to me about this unit, [staff] said [it] was for detox—not a locked ward, I do not wish to be here… as soon as I saw this was a psych unit, my mood changed. I didn't sign up for this." Plaintiff stated: "I have PTSD and I see all these men here. I came for detox and not for mental health."

*C. Confinement in Locked Unit and Requests for Discharge*

17. During her confinement on the locked 2 East unit, at least one male patient, a registered sex offender, made threats of sexual violence toward female patients on the unit. Despite Plaintiff's documented history of military sexual trauma and her known vulnerability, the VA staff failed to protect her from this patient or to separate her from the threatening individual.

18. The circumstances of her confinement caused Plaintiff severe distress given her history of military sexual trauma. Plaintiff was terrified. Given her history of sexual trauma in the military, the presence of psychologically disturbed men in the locked unit—from which she could not leave—triggered severe PTSD symptoms and emotional distress. The VA staff failed to adequately respond to Plaintiff's concerns with a safe environment.

19. Plaintiff made multiple verbal requests for discharge. On June 25, 2023, Plaintiff signed a written request for an against-medical-advice (AMA) discharge, stating that conditions on the inpatient mental health unit had negatively impacted her recovery. Despite Plaintiff's demands for immediate release including a written AMA, provider Elita C. Pallasigui, APRN, told Plaintiff she would not be discharged at that time, citing safety concerns.

20. No VA provider identified any specific safety risk or basis for continued detention. Instead, the records demonstrate that Plaintiff was cooperative, coherent, and had no acute safety risk from alcohol withdrawal or other mental health concerns.

21. The Nevada State Board of Nursing subsequently investigated Pallasigui's conduct and entered an Agreement for Reprimand and Continuing Education, finding that Pallasigui "denied a voluntarily admitted patient's request to leave the hospital against medical advice (AMA) without valid medical or psychological reasons to do so, and without following procedures for an involuntary hold."

22. VA Police were involved during Plaintiff's stay due to threats of sexual violence by a male patient against a female patient. Although Plaintiff was not the direct target of the threats, she was aware of them and experienced severe distress because she was locked in the same unit as the male patient making the threats. Throughout her more-than-50-hour detention, Plaintiff did not act inappropriately, did not require emergency medications, and was successfully detoxified from

alcohol without medical complications—further demonstrating that there was no clinical basis for denying her request for discharge.

*D. Refusal to Discharge in Violation of Nevada Law*

23. Throughout her admission, and despite her distress, Plaintiff repeatedly expressed to her medical providers and others her desire to leave the locked unit. On the first day of her admission, June 24, 2023, multiple staff documented Plaintiff's verbal requests for an AMA discharge. The OIG found that "multiple staff documented the patient's requests for an AMA discharge" soon after admission.

24. Rather than honoring Plaintiff's requests, medical staff repeatedly persuaded her to remain or ignored her requests to be discharged.

25. Under Nevada Revised Statutes § 433A.140, paragraph 3, any patient voluntarily admitted to a mental health facility "must be released immediately after the filing of a written request for release" unless the facility changes the patient's status to an emergency (involuntary) admission. The Facility's own policy, Medical Center Policy 116-22-10, permitted staff to delay an AMA discharge for up to 24 hours—a provision that the OIG found was "inconsistent with state law."

26. No action was ever taken to convert Plaintiff's voluntary admission to an involuntary status because she did not meet the legal criteria for such a conversion. Plaintiff denied suicidal and homicidal ideation throughout her stay. Nevertheless, she was not released immediately upon request, and she was not discharged from the unit until June 26, 2023, at approximately 1:30 p.m.—more than 50 hours after her admission.

27. As a direct and proximate result of the Defendant's failure to meet the medical standard of care by involuntarily holding her, Plaintiff suffered severe emotional distress, worsening of her PTSD symptoms, exacerbation of her psychological conditions, anxiety, emotional harm, physical trauma, and mood and appetite disturbances. In the months following the incident, Plaintiff lost approximately 50 pounds, experienced a relapse in her alcohol use disorder, developed worsening depression, and became unable to maintain employment. The incident triggered a profound deterioration in Plaintiff's mental health from which she has not fully recovered.

28. Plaintiff's injuries are ongoing, and her treatment continues.

## V.      FIRST CAUSE OF ACTION

*Medical Malpractice / Medical Negligence*
(Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680)
(Nevada Revised Statutes Chapter 41A)

29. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

30. At all times relevant hereto, the physicians, nurses, and other healthcare providers at the VA Southern Nevada Healthcare System owed Plaintiff a duty of care consistent with the accepted standard of medical practice in the community.

31. The VA's healthcare providers breached the applicable standard of care in the following particulars, including but not limited to:

(a) Failing to conduct an informed consent discussion with Plaintiff prior to her voluntary admission to the locked 2 East psychiatric unit, including failing to inform her that the unit was locked and housed patients with severe psychiatric conditions;

(b) Failing to implement a standardized informed consent process for voluntary admissions to the locked psychiatric unit;

(c) Placing a patient with a documented, known history of military sexual trauma in a locked ward with a sexually aggressive male patient;

(d) Refusing to honor Plaintiff's requests for discharge, in violation of Nevada Revised Statutes § 433A.140, which requires the immediate release of a voluntarily admitted patient upon request and the standard of care which requires an adequate legal and medical basis to hold patients;

(e) Maintaining and implementing Medical Center Policy 116-22-10, which permitted an unlawful 24-hour delay in AMA discharge, in violation of Nevada state law;

(f) Failing to assign oversight and guidance responsibilities to the responsible owner of the MCP, and failing to ensure the MCP complied with applicable Nevada state law, as required by VHA policy.

32. As a direct and proximate result of the foregoing breaches of the standard of care, Plaintiff has suffered and continues to suffer damages including, but not limited to, severe emotional distress, exacerbation and worsening of her PTSD and other psychiatric conditions, physical trauma, anxiety, mood and appetite disturbances, loss of trust in the healthcare system, avoidance of needed mental health treatment, diminished quality of life, lost income, and pain and suffering.

## VI.    SECOND CAUSE OF ACTION

*Negligence*
(Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680)

33. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

34. Defendant, through its agents, employees, and staff at the VA Southern Nevada Healthcare System, owed Plaintiff a general duty of reasonable care to protect her safety while she was a patient in their custody and control on the locked 2 East psychiatric unit.

35. Defendant breached its duty of care by, among other things, failing to maintain a safe environment on the locked unit, failing to protect Plaintiff from foreseeable harm by confinement with a sexually aggressive male patient, failing to adequately supervise and monitor patients on the locked unit, and failing to implement and follow policies consistent with Nevada law regarding the rights of voluntarily admitted patients.

36. As a direct and proximate result of Defendant's negligence, Plaintiff suffered the damages set forth herein.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Whitney Harrison respectfully requests that this Court enter judgment in her favor and against Defendant United States of America as follows:

1.   Compensatory damages in an amount to be proven at trial, including but not limited to damages for pain and suffering, emotional distress, exacerbation of psychiatric conditions, past and future medical expenses, lost income, and diminished quality of life;

2.   Costs of suit incurred herein;

3.   Such other and further relief as this Court deems just and proper.

Dated: April 15, 2026

/s Troy K. Flake
Troy K. Flake, Esq.
8905 S. Pecos Rd., Ste. 23B
Henderson, NV  89074
(702) 818-1800
troy@flakeandflake.com

- 8 -