TODD BLANCHE
Acting Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar Number 8264

NATHAN M. CLAUS
Assistant United States Attorney
Nevada Bar No. 5144
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6297
Fax: (702) 388-6787
Nathan.Claus@usdoj.gov

*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Whitney Harrison,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No. 2:26-cv-01161-JAD-NJK<br><br>**STIPULATION AND (PROPOSED) ORDER FOR INDEPENDENT MEDICAL EXAMINATION (IME) PSYCHIATRIC EXAMINATION OF PLAINTIFF BY ARI KALECHSTEIN, PH.D** |

Pursuant to LR 7-1, Plaintiff, Whitney Harrison, and Defendant United States of America, hereby submit this stipulation as it relates to the Rule 35 neuropsychological examination of Plaintiff by Ari Kalechstein, Ph.D.

Pursuant to Rule 35, the parties agree to the following terms for a neuropsychological examination of Plaintiff by Ari Kalechstein, Ph.D.

The examination, including the clinical interview and all testing, shall not exceed eight (8) hours in total, exclusive of all breaks. It will not include any physical examination or any diagnostic test or procedure that is painful, protracted, or intrusive. Rather, a neuropsychological evaluation includes a clinical interview and the administration of neuropsychological tests that are considered to be valid and reliable for the purpose of this evaluation, which is to assay plaintiff's cognition [thinking], emotional functioning, and

behavior only insofar as they relate to the psychological injuries Plaintiff has placed in controversy, as limited by Paragraph 2 below. The tests to be administered will be selected as appropriate from the following list:

- b–test
- Auditory Consonant Trigrams
- Boston Diagnostic Aphasia Exam and/or Western Aphasia Battery
- Brief Visuospatial Memory Test – Revised
- California Verbal Learning Test – 2 or 3
- Continuous Performance Test – 2 or 3
- Controlled Oral Word Association Test
- Delis-Kaplan Executive Functioning System
- Dot Counting Test
- Finger Tapping Test
- Grooved Pegboard Test
- Judgment of Line Orientation:
- Minnesota Multiphasic Personality Inventory-2 or 2-RF or 3
- Neuropsychological Assessment Battery (NAB)
- Personality Assessment Inventory
- Rey Auditory Verbal Learning Test
- Rey–Osterrieth Complex Figure Test
- Ruff Figural Fluency Test
- Scholastic Abilities Test for Adults (SATA)
- Selective Reminding Test
- Stroop Test
- Symbol Digit Modalities Test
- TOMM
- Trailmaking Test-Parts A and B
- Victoria Symptom Validity Test

- Wechsler Adult Intelligence Scale – III or IV
- Wechsler Memory Scale – III or IV
- Wisconsin Card Sorting Test
- Woodcock–Johnson Tests of Academic Achievement – IV

Not all of the tests on this list will be administered; Dr. Kalechstein will select tests from this list based on the clinical interview and consistent with the scope set forth in Paragraph 2. No test, subtest, inventory, or questionnaire not identified on this list shall be administered absent Plaintiff's prior written consent.

The nature, scope, conditions, and manner of the examination are to be as follows:

1. <u>Time, Location and Manner</u>: A neuropsychological examination will take place on December 7, 2026, at 8:00am in Dallas, Texas.[1] The examination, including the clinical interview and all testing, shall not exceed eight (8) hours of examination time, exclusive of reasonable breaks. Plaintiff may take reasonable breaks as needed. The examination shall conclude upon reaching eight hours of examination time whether or not all testing has been completed. No additional or continued examination shall occur absent written agreement of the parties or further order of the Court.

   Plaintiff agrees to participate in good faith and shall not intentionally delay or obstruct the examination.

2. <u>Scope and Nature of Examination</u>: The evaluation will be conducted in English. The examination will evaluate the nature, extent, causation, and prognosis of Plaintiff's claimed neuropsychological injuries and whether *any* pre-existing mental state conditions were exacerbated by the events alleged in this action.

3. <u>Clinical interview</u>: The clinical interview will cover a variety of relevant topics. Pertinent areas of inquiry will include, but are not limited to, plaintiff's

[1] The parties are still working on the final location for the exam which will be included on the notice of the exam, but have agreed to this metropolitan area.

developmental/social history, academic/employment history, medical history, mental health history, substance use history, legal history, and family history of medical and mental health conditions. In addition, the clinical interview also will elicit from plaintiff a detailed account of the onset and course of her mental state problems/impairments related to the alleged conduct of the defendants, culminating in a review of current mental state and physical complaints. A detailed evaluation of this type is important for the purpose of differentiating between mental state injuries/complaints that may be pre-existing and not related to the alleged actions of Defendant; injuries/complaints that were pre-existing but may have been exacerbated by the alleged actions of Defendant; injuries/complaints that arose concurrently but unrelated to alleged actions of Defendant; complaints that arose as a result of Defendant's alleged conduct; complaints that are due to substance use or medications; complaints that are due to an underlying general medical disorder; or complaints that arose subsequent to the alleged actions of Defendant and were unrelated.

4. Test materials: Test materials include, but are not limited to, test manuals, instruments and devices that are used to present tasks, protocols and stimuli presented to an examinee, guides or templates used to score an individual's responses to tests. The test materials are not to be disseminated under any circumstances except pursuant to the Federal Rules of Civil Procedure or an appropriate court order.

5. Raw Test Data and Examination Materials: At the same time Defendant produces Dr. Kalechstein's report under Paragraph 6, Dr. Kalechstein shall produce the complete raw test data and examination materials generated, recorded, scored, or relied upon in connection with the examination, including, without limitation, all response protocols, examinee responses, examiner-recorded responses, raw scores, scaled or standardized scores, scoring sheets, validity-test scores and indices, computerized scoring reports and output,

timing data, behavioral observations, examiner notes, and the complete audio recording of the test administration, together with a complete list identifying each test, subtest, form, and version administered.

To the extent professional or test-security requirements require any such materials to be transmitted only to a qualified psychologist or neuropsychologist, those materials shall be transmitted directly to Plaintiff's designated qualified expert at the same time. Such restrictions shall not permit Defendant or Dr. Kalechstein to withhold examinee-specific raw data, scores, scoring information, examiner notes, behavioral observations, or other information reasonably necessary to evaluate the administration, scoring, validity, or interpretation of the examination.

Nothing herein requires production or public dissemination of proprietary test manuals, test questions, stimuli, or other non-examinee-specific copyrighted testing materials except as otherwise required by the Federal Rules or order of the Court.

6. <u>Report</u>: Defendant shall also produce Dr. Kalechstein's complete written report, including all findings, diagnoses, opinions, conclusions, and test results, within thirty (30) days after the examination, or, if the report cannot reasonably be completed within that period, immediately upon completion and in no event later than Defendant's expert-disclosure deadline.

7. <u>Recording and Attendance</u>: Neither counsel nor any third party may be present in the examination room. The entire session, including the clinical interview and test administration, will be digitally audio-recorded, and no portion will occur off the record. A copy of the recording of the clinical interview will be provided to plaintiff's counsel within fourteen (14) business days. The recording of the test administration shall be produced as provided in Paragraph 5.

8. <u>Rule 35 Waiver</u>: Pursuant to Rule 35(b)(6), production of the report, recording,

raw test data, or examination materials under this stipulation and order shall not constitute a request under Rule 35(b)(1) or result in a waiver under Rule 35(b)(4).

9. Privileged Communications and Forms: Dr. Kalechstein shall not inquire into communications between Plaintiff and her counsel, the substance of any settlement discussions, or Plaintiff's litigation strategy. Plaintiff shall not be required to sign any consent, waiver, release, or authorization as a condition of the examination, other than an acknowledgment that no doctor-patient relationship is created.

10. Nothing in this stipulation limits the ability of a party to object to admissibility or methodology.

11. Costs: Defendant shall bear all fees and costs of the examination including Plaintiff's reasonable travel expenses related to attendance at the examination.

DATED this 30th day of October, 2026.

FLAKE & FLAKE
– ATTORNEYS AT LAW

By: */s/ Troy K. Flake*
TROY K. FLAKE, ESQ.

*Attorneys for Plaintiff*

DATED this 30th day of October, 2026.

TODD BLANCHE
Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney

By: */s/ Nathan M. Claus*
NATHAN M. CLAUS
Assistant United States Attorney

*Attorneys for Defendants*

**IT IS SO ORDERED.**

______________________________
UNITED STATES MAGISTRATE JUDGE

DATED: ______________________